FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 1 5 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Nowles Heinrich
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

TYLER JOHN BRAZE,

Defendant.

2:24-CR-0146-RLP

Plea Agreement

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney the Eastern District of Washington, and Nowles Heinrich, Assistant United States Attorney for the Eastern District of Washington, and Defendant TYLER JOHN BRAZE ("Defendant"), both individually and by and through Defendant's counsel, Adrien L. Fox, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count One of the Indictment filed on November 7, 2024, which charges Defendant with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), a Class C Felony.

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment up to 15 years;

PLEA AGREEMENT - 1

b.      a term of supervised release of up to 3 years;

c.      a fine of up to $250,000; and

d.      a $100 special penalty assessment.

2.      <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, up to the following terms:

a.      5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.      3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.      2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.      <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.      sentencing is a matter solely within the discretion of the Court;

b.      the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.    Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.    pleading guilty in this case may have immigration consequences;

b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

PLEA AGREEMENT - 3

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a.    the right to a jury trial;

b.    the right to see, hear and question the witnesses;

c.    the right to remain silent at trial;

d.    the right to testify at trial; and

e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Elements of the Offense

The United States and Defendant agree that to convict Defendant of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), the United States would have to prove the following beyond a reasonable doubt.

a.    *First*, on or about August 30, 2024, in the Eastern District of Washington, Defendant did knowingly possess a firearm and ammunition, to wit:

- a GSL Technology, Model Chilito, 9mm caliber silencer, bearing serial number S0923-64448,

PLEA AGREEMENT - 4

- Starline 9mm +P caliber ammunition, with the headstamp "*____*";

- Hornady 9mm caliber ammunition;

- PMC 9mm caliber ammunition;

- Winchester 9mm caliber ammunition;

- T & M 9x19mm caliber ammunition; or

- Remington 9mm caliber ammunition

b. *Second,* the firearm or ammunition had been shipped or transported in interstate and/or foreign commerce;

c. *Third,* at the time Defendant possessed the firearm or ammunition, Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

d. *Fourth,* at the time Defendant possessed the firearm or ammunition, Defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

7. <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On August 30, 2024, at approximately 5:15 P.M., a Spokane Police Department (herein "SPD") officer observed Defendant at a gas station next to a Toyota Camry that the officer recognized as being reported stolen. The officer also

PLEA AGREEMENT - 5

recognized Defendant as somebody wanted in relation to a separate vehicle theft incident. The officer turned around his vehicle to approach Defendant and turned on his lights, but Defendant entered the stolen Camry and fled at a high rate of speed. Defendant almost struck other vehicles, including when he ran a red light. Due to Defendant's dangerous driving, officers terminated pursuit. However, a short time later officers found the Camry abandoned nearby and Defendant was found walking away from the vehicle. A Toyota key was found on Defendant's person.

After speaking with witnesses and watching surveillance video, responding officers determined that after walking away from the Camry, Defendant had walked into a nearby yard and left a backpack. Officers located this bag, which had "Sig Sauer" written on it. Inside was a loaded 9mm pistol (a privately made firearm without a serial number) as well as a suppressor, also known as a silencer. The silencer was a GSL Technology, Model Chilito, 9mm caliber silencer, bearing serial number S0923-64448.

The 9mm ammunition included the following:

- Starline 9mm +P caliber ammunition, with the headstamp "*----*";
- Hornady 9mm caliber ammunition;
- PMC 9mm caliber ammunition;
- Winchester 9mm caliber ammunition;
- T & M 9x19mm caliber ammunition; and
- Remington 9mm caliber ammunition.

Defendant was arrested and brought to the police station. He was advised of his *Miranda* rights and admitted to having stolen the silencer.

The GSL Technology silencer was not registered to Defendant in the National Firearms Registration and Transfer Record.

All of the above conduct occurred in Spokane, Washington, which is in the Eastern District of Washington.

PLEA AGREEMENT - 6

At the time of this incident, Defendant knew that he was prohibited from possessing a firearm and ammunition under federal law and knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year. Defendant was convicted and sentenced to over 12 months of prison for Attempted Second Degree Burglary-Domestic Violence, by the Superior Court of Washington, Spokane County, on or about April 15, 2022.

The GSL Technology, Model Chilito, 9mm caliber silencer and the 9mm and 9x19mm caliber ammunition described above have been researched by a nexus expert with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have all been determined to be manufactured outside the state of Washington, and therefore traveled in and affected interstate or foreign commerce. Defendant acknowledges and admits that he possessed this firearm and ammunition.

The GSL Technology silencer has also been examined by an ATF Firearms Enforcement Officer ("FEO") who determined it is a "firearm" under 26 United States Code Section 5845(a)(7) of the National Firearms Act (NFA), 26 U.S.C. § 5801 et seq., meets the definition of a "silencer" as defined in Title 18, Section 921(a)(25), and qualifies as a "firearm" under Section 921(a)(3)(C) of Title 18.

8.    The United States' Agrees:

a.    *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

b.    *Dismissal of Count Two*:

At the time of sentencing, the United States agrees to move to dismiss Count Two of the Indictment, unless Defendant breaches this Plea Agreement before sentencing.

PLEA AGREEMENT - 7

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and Defendant agree that because the silencer is a firearm described in 26 U.S.C. § 5845(a) and because of Defendant's prohibited status at the time Defendant possessed the firearm, the base offense level is 20 pursuant to USSG §2K2.1(a)(4)(B).

The United States and Defendant agree that a two-level increase applies because the firearm was stolen, pursuant to USSG §2K2.1(b)(4)(A). The United States and Defendant also agree that a two-level enhancement applies under USSG §3C1.2 because Defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.

b.    Acceptance of Responsibility

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

 i. accepts this Plea Agreement;

 ii. enters a guilty plea at the first court hearing that takes place after the United States offers this Plea Agreement;

 iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

 iv. provides complete and accurate information during the sentencing process; and

PLEA AGREEMENT - 8

v.        does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

c.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

d.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

e.    Agreement Regarding Representations to the Court

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

PLEA AGREEMENT - 9

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any

PLEA AGREEMENT - 10

variance from the Guidelines range as calculated by the Court;

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement that Defendant deems appropriate.

10.    Incarceration

The parties are free to argue for any lawful sentence, except the United States agrees not to recommend a sentence above 85 months of imprisonment.

11.    Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the term or conditions of Defendant's Supervised Release is final and non-appealable; that

PLEA AGREEMENT - 11

is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    b.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

12.   Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.   Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14.   Payments While Incarcerated

If Defendant is sentenced to a term of imprisonment, but decides to not withdraw from this Plea Agreement, and Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn

PLEA AGREEMENT - 12

money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes. Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Defendant acknowledges that on May 9, 2024, a panel of the Ninth Circuit issued its decision in *United States v. Duarte*, -- F.4th --, 2024 WL 2068016 (9th Cir. 2024), holding that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to some Defendants whose prior felony convictions are nonviolent under the analysis set forth by the Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). However, on July 17, 2024, the Ninth Circuit granted the government's petition for rehearing *en banc*, which vacated the *Duarte* panel decision so that it is no longer precedential. *See Duarte*, C.A. No. 22-50048, Dkt.

PLEA AGREEMENT - 13

81 (9th Cir. July 17, 2024). Defendant acknowledges and understands that as of the date of the entry of his guilty plea to Count One pursuant to this Plea Agreement, the Ninth Circuit has not rendered an *en banc* decision in *Duarte*. Understanding that and desiring to resolve his case now rather than delay resolution pending the outcome of *Duarte*, Defendant hereby knowingly and voluntarily waives all present and future challenges to the constitutionality of 18 U.S.C. § 922(g)(1), including under *Duarte* and/or *Bruen*, and knowingly and voluntarily waives (1) appeal of his conviction and/or sentence on Count One in this case and (2) the bringing of any motions for compassionate release, habeas corpus, or other collateral attack on his conviction and/or sentence on Count One in this case based on or arising from *Duarte*, *Bruen*, or the constitutionality of 18 U.S.C. § 922(g)(1).

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17.    Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets to the United States:

- a GSL Technology, Model Chilito, 9mm caliber silencer, bearing serial number S0923-64448;

- Starline 9mm +P caliber ammunition, with the headstamp "*----*";

- Hornady 9mm caliber ammunition;

- PMC 9mm caliber ammunition;

- Winchester 9mm caliber ammunition;

- T & M 9x19mm caliber ammunition; and

- Remington 9mm caliber ammunition.

PLEA AGREEMENT - 14

Defendant acknowledges that the assets listed above are subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as property involved or used in the commission of the Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

18.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

      a.    this Plea Agreement shall become null and void;

      b.    the United States may prosecute Defendant on all available charges;

PLEA AGREEMENT - 15

c.  The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.  the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19.  Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 16

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____    _____3/3/2025_____
                                  Date
Nowles H. Heinrich
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    _____3/1/25_____
                                  Date
TYLER JOHN BRAZE
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____    _____3/1/25_____
                                  Date
Adrien L. Fox
Attorney for Defendant

PLEA AGREEMENT - 17